# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 11-631V
(to be published)

* * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| ROY GREENE, | * | |
| | * | |
| Petitioner, | * | Filed: September 26, 2017 |
| | * | |
| v. | * | |
| | * | Entitlement; Reconsideration; |
| SECRETARY OF HEALTH | * | Tetanus-Diphtheria ("Td") |
| AND HUMAN SERVICES, | * | Vaccine; Evidentiary Support |
| | * | for Onset Timeframe; Expert |
| Respondent. | * | Opinions |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * *

*Richard Gage*, Law Offices of Richard Gage, Cheyenne, WY, for Petitioner.

*Ann Martin*, U.S. Dep't of Justice, Washington, DC, for Respondent.

### DECISION ON RECONSIDERATION DENYING ENTITLEMENT[1]

On May 26, 2017, I issued a decision denying Petitioner's request for compensation in this case and dismissing his claim. ECF No. 93. Petitioner then filed a motion for reconsideration of my decision on June 16, 2017, along with a supplemental (albeit unauthorized) expert report and several items of previously-unfiled medical literature. ECF Nos. 94-97. I withdrew my decision in order to evaluate the merits of the reconsideration request.

Now, having had the chance to do so, I hereby again DENY entitlement after reconsideration. Petitioner has not established why the arguments he raises on reconsideration

---

[1] This decision has been designated "to be published," and will therefore be posted on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (Dec. 17, 2002) (current version at 44 U.S.C. § 3501 (2014)). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the published ruling's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision in its present form will be available to the public. *Id.*

pertaining to the third *Althen* prong could not have been asserted earlier, and I also find that those arguments are not otherwise persuasive.

**Factual and Procedural History**

The facts relevant to the present decision, as well as the general procedural history in this matter, are set forth in my earlier onset fact ruling and withdrawn initial decision denying entitlement, and are incorporated by reference. *See* Ruling Regarding Findings of Fact, dated July 31, 2015 (ECF No. 56) ("Fact Ruling"); Decision Denying Entitlement, dated May 23, 2017 (ECF No. 93) ("Decision"), withdrawn by Order dated June 19, 2017 (ECF No. 98).

In short, on September 29, 2011, Roy Greene filed a petition for compensation in the National Vaccine Injury Compensation Program (the "Vaccine Program"),[2] alleging that he developed brachial neuritis as a result of his July 22, 2009, receipt of the tetanus-diphtheria ("Td") vaccine. Pet. (ECF No. 1). Mr. Greene originally alleged both a Table injury claim and a "non-Table" causation-in-fact claim *(id.* at 2), but I dismissed the Table claim after a March 2015 fact hearing, at which time I determined that his symptoms arose 41 days after the vaccination, and thus occurred outside the 28-day limit for the Table claim. 42 C.F.R. § 100.3(a)(I)(B)).

Over the next two years, the parties engaged in ultimately-fruitless settlement discussions, including a mediation. By the end of 2016, original counsel had withdrawn and present counsel (Richard Gage, Esq.) had appeared. But the parties' inability to settle the case was made known to me earlier in the fall of 2016 – as well as the fact that Respondent had questioned the adequacy of Petitioner's showing as to the third prong under *Althen v. Sec'y of Health & Human Servs.,* 418 F.3d 1274 (Fed. Cir. 2005), which evaluates whether the timing of a claimant's alleged post-vaccine injury is medically acceptable. *See* Order, dated September 29, 2016 (ECF No. 72).

Since my 2015 Fact Decision, it has been well understood that the propriety of the 41-day onset timeframe was pivotal to the claim's resolution. Fact Ruling at 22. Yet Petitioner's initial expert (Dr. Thomas Wright, an orthopedist) inadequately addressed this matter, despite *two* opportunities to do so in written reports, relying instead on the conclusory argument that the onset date I had determined was still "close" enough to the 28-day period for a Table claim to be medically acceptable. Decision at 2-4. After I inquired as to why the parties had not resolved the claim, and learned that Respondent rejected the adequacy of Petitioner's showing on this prong, I ordered Petitioner to obtain a supplemental expert opinion. *See* Order, dated September 29, 2016 (ECF No. 72).

In early 2017, Petitioner offered a report from a second expert, Dr. Marcel Kinsbourne, but it similarly relied on conclusory reasoning in arguing that the 41-day onset for Mr. Greene's brachial neuritis was medically appropriate. Decision at 5. I thereafter invited a motion to dismiss

---

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended, 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act.

from Respondent, ruling in his favor. *Id.* at 16. In so doing, I noted that Petitioner could not as a matter of law rely on a timeframe set for a Table claim to justify the timeframe for a comparable non-Table claim. *Id.* at 12-13. But that was the sole offered explanation for the reasonableness of the timeframe at issue, as neither of Petitioner's experts offered any other substantiation for why 41 days was medically acceptable. *Id.* at 13-14. Instead, they merely set forth an opinion on timeframe based on their *ipse dixit*. *Id.* at 14.

*Request for Reconsideration*

On June 16, 2017, Mr. Greene filed the pending motion for reconsideration. *See* Motion for Reconsideration, dated June 16, 2017 (ECF No. 97) ("Reconsid. Mot."). The reconsideration request makes two general sets of arguments – one based on evidentiary standard grounds, the other on substantive grounds.

With respect to the former, Mr. Greene posits that Dr. Wright's opinion was never rebutted by any responsive expert opinion, and therefore should have been deemed sufficient to constitute preponderant evidence establishing the third prong. Reconsid. Mot. at 2. He also maintained that I unreasonably required that opinion to be supported by medical literature, contrary to controlling Federal Circuit case law. *Id.* at 2, *citing Capizzano v. Sec'y of Health & Human Servs.,* 440 F.3d 1317, 1321 (Fed. Cir. 2006). And he maintained that the 42-day period for onset of a wide variety of autoimmune conditions found ample support in other Program decisions (although the reconsideration request does not explain why no reference was made to these decisions when opposing Respondent's motion). *Id.* at 4. Throughout the reconsideration request, Petitioner also repeats his view (rejected by my initial decision dismissing the claim) that reliance on the Table timeframe applicable to brachial neuritis or similar neuropathic injuries is reasonable. *See, e.g., id.* at 2 ("not a huge analytical gap" to go from the Table's 28-day timeframe to the 41 day period relevant to the non-Table claim), 4 (noting that Table claim for guillain-barré syndrome ("GBS") allows latency after vaccine of up to 42 days).[3]

Regarding the second argument (and despite Petitioner's assertion that requiring him to make a more substantiated showing as to the third prong amounted to holding him to a "higher standard" than required by the Vaccine Act (Reconsid. Mot. at 5)), Petitioner maintained that reliable medical and scientific evidence supports 41 days as a medically appropriate timeframe for onset of brachial neuritis after receiving the Td vaccine. *Id.* at 5-6. To that end, Mr. Greene has filed a supplemental expert report from Dr. Kinsbourne, dated June 13, 2017, filed as Ex. 45 (ECF

---

[3] Petitioner's motion for reconsideration otherwise avoids explaining why he failed to address squarely Respondent's challenge to the adequacy of his third *Athen* prong showing, beyond asserting that (perhaps relying on his belief that the showing he had made, such as it was, satisfied his evidentiary burden) he and his experts "were unaware" that they needed to do more than invoke the Table's timeframe and present conclusory expert opinions. Reconsid. Mot. at 4-5.

No. 94-1) ("Kinsbourne Supp. Rep.")),[4] along with 19 pieces of additional medical or scientific literature. *See* ECF Nos. 94-96 (Exs. 46-66).

Despite the volume of additionally-filed materials, there is less contained in these filings, substantively speaking, than meets the eye. None of these pieces of literature were published after my initial May decision denying entitlement, and therefore do not constitute "new" evidence that could only have been discovered in the past several months. Moreover, of the 19 new items filed, only seven directly involve brachial neuritis or an arguably parallel condition. Some are inapposite case studies in which the affected individual experienced a possible vaccine-related reaction far *sooner* than relevant herein. *See, e.g.,* G. Martin et al*., Brachial Neuritis and Seventh Nerve Palsy – A Rare Hazard of DPT Vaccination*, 12 Clin. Ped. 506, 506-07 (1973), filed as Ex. 61 (ECF No. 95-8) (five-month old developed symptoms of brachial neuritis within two days of vaccination). Dr. Kinsbourne nevertheless argues that the risk interval incorporated into the Table's brachial neuritis claim would have been longer if the relevant studies when the Table claim was created had not over-relied on such limited instances (or excluded longer timeframe occurrences outright). Kinsbourne Supp. Rep. at 2. Of course, in making that argument, Petitioner was once again attempting to leverage the adequacy of the Table timeframe in his favor – a posture I have already rejected in my initial entitlement decision.

Dr. Kinsbourne also attempts to analogize brachial neuritis to other autoimmune diseases such as GBS, given the fact the both involve peripheral nerve damage, and possibly the same autoimmune target and/or antibodies. *See, e.g.,* Kinsbourne Supp. Rep. at 3 ("Brachial Neuritis and GBS are Related Disorders"), and Exs. 50-52, 54. But to do so, he invoked scientific or medical literature that upon close inspection was not reliable for the purpose cited. Thus, Dr. Kinsbourne cites R. Verma et al*., Neuralgic Amyotrophy Associated with Dengue Fever: Case Series of Three Patients,* 57 J. Postgrad. Med. 329, 329-31 (2011), filed as Ex. 52 (ECF No. 94-8) ("Verma") as helping establish the association between GBS and brachial neuritis mechanistically (and therefore in turn allowing for the conclusion that timeframes associated with one could be applied to the other). Kinsbourne Supp. Re. at 3. Verma, however, not only involved a three-person case study

---

[4] Accompanying Dr. Kinsbourne's supplemental report is a *fifth* expert report (from Dr. Vera Byers) not otherwise disclosed or identified as such (although referenced in Dr. Kinsbourne's own report), and not solicited or approved by me in advance of filing. *See* Ex. 46 (filed as ECF No. 94-2) ("Byers Rep."). The report (which was accompanied by five items of literature) has also been mistakenly filed twice. *See* Ex. 59. This unauthorized additional expert report does not substantially aid Petitioner's case, however. Dr. Kinsbourne's newest report references the concept that variations in "host factors" can impact the timing of an autoimmune response, citing to Dr. Byers's opinion (presented in a two-page letter) for support. Kinsbourne Supp. Rep. at 1. Dr. Byers in turn expands on this concept, discussing variation in cytokine ranges in experiments involving diabetic mice as suggesting that humans might also experience variability in the length of an autoimmune response based on inherent genetic differences between individuals. Byers Rep. at 1-2. But Mr. Greene has *not* been identified as possessing any notable factors that would suggest his immune response would take longer than what usually might be expected for an autoimmune reaction resulting in brachial neuritis (or any possibly comparable peripheral neuropathy for that matter). And Dr. Byers offers no opinion directly relevant to Mr. Greene's circumstances either (*i.e.,* she does not opine that the 41-day post-vaccination onset of his brachial neuritis was attributable to the variations she discusses, nor does she maintain that the progression or onset of brachial neuritis has been specifically found to be subject to such difference). I therefore give this additional, unauthorized expert opinion little weight.

(a type of evidence that Program case law generally gives less weight)[5], but addressed brachial neuritis arising after an active dengue fever infection rather than post-vaccination. Verma at 329. And each case study evaluated in Verma involved post-infectious onset occurring in a far more acute manner than herein. *Id.* at 329-330 (onset of first symptoms of arm or shoulder pain occurring approximately two weeks, 17 days, and one week, respectively, after initial dengue fever symptoms).

In seeking to establish a longer timeframe for Td-induced brachial neuritis, Petitioner offered some reliable items of literature discussing the timeframes accepted in the medical community for autoimmune illnesses. *See, e.g.,* Rowhani–Rahbar et al., *Biologically Plausible and Evidence–Based Risk Intervals in Immunization Safety Research,* 31 Vaccine 271, 271–77 (2012), filed as Ex. 48 (ECF No. 94-4) ("Rowhani-Rahbar"). Rowhani-Rahbar proposed risk interval estimates for two adverse events following vaccine administration – febrile seizures and acute disseminated encephalomyelitis ("ADEM"). *Id.* at 273. For ADEM (the closest analog to Petitioner's brachial neuritis, given its neurologic nature), Rowhani-Rahbar concluded that the likely time period from vaccination to onset "best substantiated by available biological and epidemiologic data" was five to 28 days. *Id.* at 274. A secondary, longer interval of two to 42 days was also deemed "biologically plausible," and therefore worthy of consideration in order to fully assess a potential safety problem, but was more uncertain, since "there might be reason to suspect that most of the excess risk, if any, is concentrated in a much shorter period of time." *Id.* at 275. This secondary interval has nevertheless been found persuasive by other special masters despite its admitted foundational limitations. *See, e.g.*, *Day v. Sec'y of Health & Human Servs.,* No. 12-630V, 2015 WL 8028393, at *22 (Fed. Cl. Nov. 13, 2015) (applying Rowhani–Rahbar secondary risk interval to case alleging that petitioner's multiple sclerosis was vaccine-caused).

   *Objections to Reconsideration*

After Petitioner's motion for reconsideration was filed, I urged the parties to make a final, good-faith effort to settle the case. *See* Order, dated June 28, 2017 (ECF No. 99). Their efforts were unsuccessful, however, and so Respondent filed an objection to the reconsideration request in August. Response to Motion for Reconsideration, dated August 23, 2017 (ECF No. 101) ("Opp."). In it, Respondent (after reviewing the relevant legal standards) stressed that Petitioner had received a "full and fair" opportunity to substantiate his timeframe argument, and therefore had established no grounds to continue to seek to litigate the point. Opp. at 3-6.

Respondent also addressed some of the specific arguments embodied in Dr. Kinsbourne's new report and associated medical and scientific literature. Respondent observed that some of the studies offered to establish that 42 days was a medically acceptable timeframe actually undercut the conclusion that the tetanus vaccine posed any risk at all of brachial neuritis. Opp. at 6-7, *citing*

---

[5] *See Holt v. Sec'y of Dep't of Health & Human Servs.,* No. 05-0136V, 2015 WL 4381588, at *28 (Fed. Cl. Spec. Mstr. June 24, 2015) (discussing evidentiary limitations of case study evidence in establishing vaccine causation).

Tseng et al., *Safety of the Tetanus-Diphtheria-Acellular Pertussis Vaccine When Used Off-Label in an Elderly Population*, 56 CID 315, 315-21 (2013). Respondent further pointed out the legal limitations of analogizing brachial neuritis to GBS in attempting to make an *Althen* three showing, noting the long-recognized principle in the Vaccine Program that the timeframes relevant to different vaccines and their injuries are not "interchangeable." *Id.* at 8, *citing Grant v. Sec'y of Health & Human Servs.,* 956 F. 2d 1144, 1147-48 (Fed. Cir. 1992).

More specific to the injury in question, Respondent noted that the best existing evidence of a link between vaccines containing tetanus toxoid and brachial neuritis -- the Institute of Medicine's ("IOM") 1994 report -- had also set forth a proposed latency timeframe that did not exceed four weeks. Opp. at 8-9 *citing* Stratton et al, *Adverse Effects of Vaccines: Evidence and Causality* 54-55, 90-94 (Nat'l Acad, Press 2011), filed as Ex. A ("IOM Rep."). Dr. Kinsbourne sought to establish that the reasonableness of a longer timeframe simply had not been investigated since the IOM's findings over twenty years ago, which were now somewhat stale. Kinsbourne Supp. Rep. at 4. However, to make that argument was to seek to discredit the *same* evidence that Petitioner relied upon to establish a causal relationship in the first place. Opp. at 11.

The reconsideration request is now fully briefed and ripe for resolution.

## Analysis

Vaccine Rule 10(e) governs motions for reconsideration of a special master's decision. As it provides, "[e]ither party may file a motion for reconsideration of the special master's decision within 21 days after the issuance of the decision . . . ." Vaccine Rule 10(e)(1). Special masters have the discretion to grant a motion for reconsideration if to do so would be in the "interest of justice." Vaccine Rule 10(e)(3). Although I voluntarily withdrew my earlier decision, I shall still apply and consider the standards for reconsideration, since the underlying merits of Petitioner's request have not yet been resolved.

As noted by another special master, "there is a dearth of law interpreting Vaccine Rule 10(e)(3)," beyond the conclusion that (as the rule itself makes clear) it is within the special master's discretion to decide what the "interest of justice" is in a given case. *R.K. v. Sec'y of Health & Human Servs.*, No. 03-632V, 2010 WL 5572074, at *3 (Fed. Cl. Spec. Mstr. Jan. 10, 2011) (granting reconsideration of decision dismissing case for failure to prosecute). Many decisions assume that the standard for reconsideration is congruent with the "manifest injustice" standard utilized under Rule 59(a) of the Rules of the Court of Federal Claims, which has been defined to be unfairness that is "clearly apparent or obvious." *Amnex, Inc. v. United States*, 52 Fed. Cl. 555, 557 (2002); see also *R.K.*, 2010 WL 5572074, at *3-5 (citations omitted). At bottom, the question is whether reconsideration would provide a Vaccine Act petitioner a full opportunity to prove her case. *R.K.*, 2010 WL 5572074, at *5.

I have denied reconsideration requests where no truly novel evidence is offered, but rather where the movant mainly disagrees with my initial decision and seeks to reargue an earlier-stated position. *See, e.g., D'Tiole v. Sec'y of Health & Human Servs.,* No. 15-085V, 2016 WL 8136296 (Fed. Cl. Spec. Mstr. Dec. 21, 2016), *mot. for review den'd*, 132 Fed. Cl. 421 (2017), *appeal docketed* (Fed. Cir. May 4, 2017); *Kerrigan v. Sec'y of Health & Human Servs.,* No. 16-270V, 2016 WL 7575240 (Fed. Cl. Spec. Mstr. Nov. 22, 2016).

Having reviewed the materials offered by Petitioner relevant to onset, I do not find that he has established persuasive grounds for reversing my earlier entitlement decision, and therefore I will reinstitute my initial decision denying compensation. My determination flows from the same two considerations – one procedural, the other substantive – that Petitioner's reconsideration request revolves around. Although the former consideration bears somewhat less on my determination, it is still important.

As the procedural history of this case starkly reveals, Petitioner was unreasonably dilatory in substantiating the long-identified deficiencies in his *Althen* three showing. Since the summer of 2015, Petitioner has been aware that the success of his non-Table claim depended on establishing the validity of a 41-day post-vaccination onset. He had more than enough time to obtain a competent expert to so opine – and to adjust that opinion in reaction to Respondent's objections. He also had ample time to marshal whatever medical or scientific literature he thought would bulwark the theory. Yet he did nothing, relying instead on conclusory opinions that in turn depended on the mistaken belief that the Table timeframe could be applied to this claim. By the time Dr. Kinsbourne's report was filed in January 2017, Petitioner clearly was aware of Respondent's objections about the timing of onset – yet that report as well was largely conclusory on this critical component of his claim.

Given the above, it is difficult to justify Petitioner's present, all-out effort to make a case he should have made months ago. Petitioner has not offered a single persuasive explanation for his prior failure to address this matter at the appropriate time.[6] He has also not endeavored to establish any of the specific grounds for reconsideration (nor could he, as the evidence offered is far from new). Petitioner might respond that it is more generally in the "interests of justice" that I permit him the fullest opportunity possible to make his case – but if so, it is hard to envision *any* circumstance in which a claimant, having failed to satisfy some element of his claim, would *not* be entitled to continue to argue the merits of a point despite the passage of deadlines to act, since allowing a claimant to do so would inherently provide him a more "full and fair" opportunity to establish entitlement (regardless of how much of an opportunity he had already received). Although relevant case law counsels leniency in affording Vaccine Program claimants every

---

[6] The change in counsel in November 2016 is certainly no justification for reconsideration. Petitioner has been represented by two individuals well versed in the Vaccine Program's practices and applicable law, and was in fact represented by prior counsel for nearly five years. Present counsel had a reasonable opportunity to review the record, take note that the third *Althen* prong was the primary point of contention, and prepare an expert report addressing the matter.

chance to make their case, *this* procedural record establishes that Petitioner already received such an opportunity.

Nevertheless – I am loathe to reject Petitioner's reconsideration request solely on the unjustifiably dilatory nature of his *Althen* prong three showing. I therefore have reviewed and considered the 20-plus pieces of literature, plus supplemental report, filed after my Decision, to evaluate if they fill the evidentiary hole in Mr. Greene's overall showing. I find they do not.

Petitioner has offered little evidence directly relevant to the injury at issue – a failing not completely fatal to his claim, but still a factor to be taken into account in determining how much weight to give the evidence offered overall. He has offered case studies which largely underscore the reliability of the Table's timeframe, but do not bulwark his claims that a longer period is acceptable. He has also made an inadequately specific showing with respect to either the illness in question or the Td vaccine. And he has done all the above utilizing an expert, Dr. Kinsbourne, who has not been demonstrated to have specific, applicable experience with peripheral neuropathies of any kind, or brachial neuritis itself, sufficient to render his interpretation of the facts of this case or background science persuasive in the absence of other direct convincing proof.

By contrast, there is applicable law relating to what is medically reasonable for onset of post-vaccination brachial neuritis – but it is not favorable to Petitioner. For example, in *Garner v. Sec'y of Health & Human Servs.*, No. 15-063V, 2017 WL 1713184 (Fed. Cl. Mar. 24, 2017), *mot. for review den'd*, 2017 WL 3483352 (Fed. Cl. July 31, 2017), I considered a claim that the Hepatitis A and B vaccines caused Parsonage-Turner Syndrome (a parallel descriptor for brachial neuritis). The earliest onset possible in *Garner* was 45 days after vaccination, based on the first record documentation of any complaints by petitioner about arm or shoulder pain. *Garner*, 2017 WL 1713184, at *1. Respondent's expert, however, argued that the condition was far more acute in nature (and in terms of the causative mechanism), making in his opinion four weeks the outer limit for latency. *Id.* at *8. I found this point to be dispositive, even though the claimant's *Althen* prong one showing was persuasive. *Id.* at 16. Nothing Petitioner has argued in this case is any more persuasive than what I have previously rejected in like circumstances.

I acknowledge that Petitioner has offered some reliable evidence supporting the medical acceptability of a 41-day onset for *other* autoimmune conditions. Rowhani-Rabhar, for example, supports the assertion that an autoimmune process could begin in the same timeframe that Mr. Greene experienced. But the fact that this article does not involve brachial neuritis, or any comparable peripheral neuropathic injury, does somewhat limit its applicability. More generally, it is too sweeping to maintain that there is a single temporal yardstick applicable to any autoimmune illness. To so argue is to ignore the different ways in which specific kinds of injuries unfold. *Garner*, 2017 WL 1713184, at *16 (rejecting attempt to apply timeframes relevant to different autoimmune demyelinating illness to brachial neuritis). Petitioner's showing is thus too nonspecific to the injury at issue, even if it is based in reliable science.

Although I have attempted to avoid resolving this reconsideration request solely on the basis of Petitioner's untimely acts, my weighing of the late-filed substantive evidence is nevertheless reasonably informed by the temporal circumstances of its filing. If Petitioner had been able to marshal more straightforward and/or compelling evidence supporting the conclusion that the timing of onset of his brachial neuritis was medically acceptable – either due to directly on-point literature or by citing prior decisions involving the same injury – the strength of that showing would not be as diminished by its dilatory character. Here, however, the evidence is mixed at best, and requires too much reliance on timeframes relevant to distinguishable autoimmune illnesses. Such evidence is thus insufficiently novel or persuasively striking enough on its own to ignore its unjustifiably late assertion.

Petitioner's other arguments on reconsideration are meritless. The fact that Respondent offered no expert to attack the assertions of Drs. Wright and Kinsbourne does not mean I am required to accept their opinions wholesale. S*ee Barone v. Sec'y of Health & Human Servs.*, No. 11-707, 2014 WL 6834556, at *12 (Fed. Cl. Spec. Mstr. Nov. 12, 2014) (evaluating reasonableness and reliability/persuasiveness of Petitioner's expert showing, even where Respondent offered no rebuttal expert of his own). Nor, as previously noted in my withdrawn Decision, need I accept an expert's unsubstantiated *ipse dixit.* Decision at 14. And Petitioner's repeating (whether openly or implicitly) of his prior argument that the timeframe in question herein is only a bit longer than the Table's timeframe, and therefore should gain credence from that fact, makes the argument no more credible or persuasive than it was the first time I rejected it, and is certainly not an independent basis for reconsideration. *Id.* at 12-13.

## CONCLUSION

The record does not support Petitioner's allegation that his Td vaccine more likely than not caused his brachial neuritis 41 days following the vaccination. Petitioner has not established entitlement to compensation, and therefore I must **DISMISS** the claim.

In the absence of a timely-filed motion for review (see Appendix B to the Rules of the Court), the Clerk shall enter judgment in accordance with this decision.[7]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[7] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.